# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| STEVE TYSON, | : | Case No. 3:22-cv-211 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| TROOPER M. CARTER, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## REPORT AND RECOMMENDATIONS[1]

This case is presently before the Court upon Defendant Trooper Mutawakkil Carter's Motion to Dismiss (Doc. #28) and Plaintiff Steve Tyson's Response in Opposition (Doc. #30). For the reasons that follow, the undersigned **RECOMMENDS** that Defendant Carter's Motion be **GRANTED** in part and **DENIED** in part.

## I.   Procedural History

The claims in this case arise out of a traffic stop occurring on October 31, 2021, in which Plaintiff alleges, among other things, that Defendant Carter violated his constitutional rights. Plaintiff initially filed a Complaint detailing these allegations in the Miami County Court of Common Pleas on June 29, 2022.  (Doc. #1-1, *PageID* #s 5-13).  Within a month of initiating the action, Plaintiff filed his First Amended Complaint, in which he added allegations related to a second traffic stop that occurred on July 2, 2022.  (Doc. #1-2, *PageID* #s 14-22).  The First Amended Complaint also served to add the State of Ohio and an "Officer Williams" as Defendants.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

*See id*. The case was then removed to this Court by Defendant Carter on August 3, 2022. (Doc. #1, *PageID* #s 1-3).

In September 2022, Plaintiff filed his Second Amended Complaint. (Doc. #9). In Plaintiff's Second Amended Complaint (Doc. #9), Trooper Williams was removed as a defendant as were the references to the second traffic stop on July 2, 2022. *Compare* Doc. #9 *to* Doc. #3. This amendment also served to join Robert Hagen, who Plaintiff identifies as a security guard employed at the Flying J. Travel Center Gas Co., as a defendant who conspired with Defendant Carter to violate Plaintiff's Constitutional rights. *See* Doc. #9. Although Plaintiff subsequently moved to file a third and fourth amended complaint, his motions were denied. (Doc. #s 21-23, 26). Thus, Plaintiff's Second Amended Complaint is the operative complaint in this case.

On May 8, 2024, United States District Judge Walter H. Rice dismissed Plaintiff's claims against Defendants Robert Hagen, Flying J Travel Center Gas Co., and the State of Ohio for failure to perfect service under Federal Rule of Civil Procedure 4. (Doc. #38).

## II.    Standard of Review

The Federal Rules of Civil Procedure provide that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed. R. Civ. P. 8(a)(2). While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations' ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

2

A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal for "failure to state a claim upon which relief can be granted." In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679, 129 S.Ct. 1937 (alteration in original) (citing Fed. R. Civ. P. 8(a)(2)).

In determining a motion to dismiss, the Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, this Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

While *pro se* parties must satisfy basic pleading requirements, *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989), their pleadings must be liberally construed and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Nevertheless, "even a *pro se* complaint 'must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face.'" *Ogle v. Columbia Gas Transmission, LLC,* 513 F. App'x 520, 522 (6th Cir. 2013) (citing *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937).

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to move to dismiss for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Jurisdictional challenges under that Rule come in two forms, facial and factual. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). "Under a facial attack, all of the allegations in the complaint must be taken as true, much as with a Rule 12(b)(6) motion." *Id.* However, under a factual attack, "the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Id.* (citations omitted).

## III.   Plaintiff's Allegations

Plaintiff alleges that on October 31, 2021, Defendant Carter pulled him over based on false information from Robert Hagen, a security guard employed by Flying J. Travel Center Gas Co. (Doc. #9, *PageID* #s 71-73). According to Plaintiff, after Hagen saw Plaintiff kiss an employee of Flying J. Travel Center, Hagen called Defendant Carter and told him Plaintiff "reeked from alcohol" and "unlawfully handled his firearm." *Id.* at 71-72. Defendant Carter then pulled Plaintiff over for an alleged lane change violation. *Id.* at 71. Plaintiff alleges that "there was never a traffic violation." *Id.* at 73. Defendant Carter did not administer a field sobriety test, or he was not certified to administer such a test. *Id.* at 72. Plaintiff asserts that Defendant Carter lacked probable cause to order Plaintiff to exit his vehicle, detain him, interrogate him, search his vehicle, and seize his property. *Id.* at 73. Plaintiff was arrested and charged with a "CCW violation." *Id.* at 71-72. After Plaintiff was released, he returned to his vehicle and was allowed to drive away. *Id.* at 73. The charges were later dismissed (case no. 2021CRM03391). *Id.* at 72.

Plaintiff brings several claims against Defendant Carter, including unreasonable search and seizure in violation of the Fourth Amendment (Counts I and III); First Amendment retaliation (Count II); Implementing 42 U.S.C. § 14141 (Count IV); conspiracy to interfere with civil rights under 42 U.S.C. § 1985 (Count V); malicious prosecution (Count VI); Eleventh Amendment (Count VII); violations of the code of conduct (Count VIII); conspiracy to deprive Plaintiff of legal and constitutional rights (Count IX); and "Assaultive" (Count X). *Id.* at 73-78.

## IV.    <u>Defendant Carter's Motion to Dismiss & Plaintiff's Response</u>

Defendant Carter moves the Court to dismiss this case for failure to state a claim upon which relief can be granted and lack of subject-matter jurisdiction. (Doc. #28) (citing Fed. R. Civ. P. 12(b)(1) and (6)).  Generally, he asserts that Plaintiff's Constitutional claims fail because his "Complaint contains too few factual allegations to plausibly support a civil-rights claim against Trooper Carter." *Id.* at 182-83.  Specifically, Defendant Carter argues that Plaintiff's search and seizure claims and First Amendment retaliation claim fail because the dash-cam video shows that Defendant Carter had probable cause to stop Plaintiff for the marked lanes violation and probable cause to arrest Plaintiff after the administration of the field sobriety tests. *Id.* at 174-77.  Further, Defendant Carter contends that Plaintiff's § 1985 conspiracy claim fails because he does not claim any class membership, a necessary element of such claims. *Id.* at 177-78.  Moreover, he asserts that Plaintiff failed to allege facts in support of all four elements of a claim of malicious prosecution under the Fourth Amendment. *Id.* at 179-80.  Finally, Defendant Carter argues that this Court lacks subject-matter jurisdiction over Plaintiff's state law tort claims. *Id.* at 180-81.

In his response, Plaintiff argues that there was not a marked lanes violation, and Defendant Carter arrested him because of what Hagen told him. (Doc. #30, *PageID* #189).  He indicates that

he was able to go back to his car after three and a half hours, but his brother had to pick him up. *Id.* Further, Defendant Carter left his truck's lights on, killing the battery. *Id.*

## V. __Discussion__

The Court construes Plaintiff's allegations to raise claims for violations of constitutional rights under the First and Fourth Amendments and 42 U.S.C. § 1983, as well as state law. Section 1983 prohibits any person "under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving a United States citizen "of any rights, privileges, or immunities secured by the constitution and laws." 42 U.S.C. § 1983. Section 1983 is a remedial statute which does not create independent substantive legal rights on its own, but simply provides a vehicle by which a person may impose civil liability on state actors for violation of rights secured to the individual by federal law. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To prevail on a § 1983 claim, a plaintiff must demonstrate that: (1) he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was caused by a person acting under color of law. *Robertson v. Lucas*, 753 F. 3d 608, 614 (6th Cir. 2014) (citing *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971)). Defendant does not contest that he was acting under the color of law when he conducted the traffic stop. Therefore, the Court focuses its analysis on whether Defendant's actions as described in the Second Amended Complaint can plausibly amount to a violation of an established constitutional right.

### A.    __Dash-Cam Video[2]__

In his Motion to Dismiss, Defendant Carter asks the Court to consider the dash-cam video of his stop of Plaintiff. (Doc. #28, *PageID* #s 173-74). Plaintiff does not object; indeed, he

---

[2] In September 2022, the Court granted Defendant Carter leave to manually file the dash camera audio-visual recordings of the October 31, 2021 traffic stop in support of his previous motion to dismiss. *See* Aug. 24, 2022 Notation Order; Sept. 1, 2022 Notice of Manual Filing.

indicates the dash-cam video "may be helpful." (Doc. #30, *PageID* #189).

Although a court ruling on a motion to dismiss is ordinarily limited to considering the pleadings, *Electronic. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023), "a court … '*may* consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.'" *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017) (quoting *New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003)). "However, unless the videotape 'blatantly contradicts' the allegations in the complaint, the court must still accept those allegations as true." *Laning v. Doyle*, No. 3:14-cv-24, 2015 WL 710427, at *3 (S.D. Ohio Feb. 18, 2015) (citing *Garcia v. Does*, 764 F.3d 170, 180 (2d Cir. 2014)); *see also Leonard v. Phillips*, No. 2:20-CV-613, 2021 WL 12260885, at *3 (S.D. Ohio Feb. 23, 2021) (citing *Bailey*, 860 F.3d at 386 (a video may be relied upon when it "utterly discredits" the plaintiff's version of events and allows the Court to ignore the "visible fiction" in a complaint); *Osberry v. Slusher*, 750 F. App'x 385, 390 (6th Cir. 2018) ("If 'no reasonable jury could watch the video' and agree with the plaintiff, the video 'allows us to ignore the 'visible fiction' in his complaint.'")). The Ohio Supreme Court has previously held that a trooper's dash-cam video is a public record, because "dash-cam recordings ... document governmental activities, decisions, and operations during a traffic stop and pursuit" by Ohio Highway Patrol officers." *State ex rel. Cincinnati Enquirer v. Ohio Dep't of Pub. Safety*, 148 Ohio St.3d 433, 439 (2016) (citation omitted); *see Wagner v. City of Canton, Ohio*, No. 5:19CV0377, 2020 WL 1514551, at *3 (N.D. Ohio Mar. 30, 2020). Accordingly, the undersigned takes judicial notice of Defendant Carter's dash-cam video. *See Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021) (citing *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017) ("[T]his court may take judicial notice of public records, and we are not required to accept as true factual allegations

that are contradicted by those records.").

**B.      Search and Seizure**

Plaintiff brings two claims (Counts I and III) of unreasonable search and seizure under the Fourth Amendment against Defendant Carter related to the traffic stop on October 31, 2021. (Doc. #9, *PageID* #s 73-75). Plaintiff's claims can be divided into three categories: (1) the initial stop; (2) Defendant Carter's actions during the stop; and (3) Plaintiff's arrest. The undersigned will address each in turn.

*1.  Initial Stop* (Count I)

The Fourth Amendment to the United States' Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Stopping a vehicle and detaining its occupants amounts to a seizure under the Fourth Amendment. *See Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391 (1979). A traffic stop may be considered reasonable "so long as the officer has probable cause to believe that the motorist has violated the traffic law." *United States v. Tubbs-Smith*, 800 F. App'x 349, 352 (6th Cir. 2020) (quoting *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008)). Whether an officer has probable cause to believe that a traffic violation has been committed depends on whether they "have reasonable grounds for belief supported by more than a mere suspicion." *Tubbs-Smith*, 800 F. App'x. at 352 (citing *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006)). An officer's observation of a traffic violation suffices to provide probable cause to stop a car for "any infraction, no matter how slight." *See Blair*, 524 F.3d at 748-49 (holding that the officer had probable cause

to stop defendant for a tag light violation after being unable to make out the tag because the operating lamp was not working).

Defendant Carter asserts that Plaintiff's search and seizure claim related to his traffic stop fails because the dash-cam video shows that Defendant Carter had probable cause to stop Plaintiff for the marked lanes violation. (Doc. #28, *PageID* #s 174-76). A review of the dash-cam video shows Plaintiff crossing the white line and driving half in the shoulder for approximately ten seconds, a marked lanes violation.[3] Video at 1:14-1:25.

In his Second Amended Complaint, Plaintiff alleges that Defendant Carter and Hagen "stopped the Plaintiff for … allegedly being intoxicated …" on October 31, 2021. (Doc. #9, *PageID* #73). According to Plaintiff, "There was never probable cause for a traffic stop … because there was never a traffic violation that occurred …." *Id*. However, the dash-cam video "blatantly contradicts" and "utterly discredits" Plaintiff's allegations that a traffic violation did not occur. As the dash-cam video shows that Defendant Carter conducted the traffic stop after witnessing Plaintiff commit a traffic violation, the initial traffic stop does not constitute a violation of the Fourth Amendment.[4]

Plaintiff also alleges that Defendant Carter pulled him over based on the information he received from Hagen, not because of the minor traffic violation. However, when a "traffic stop is

---

[3] Under Ohio law, "[w]henever any roadway has been divided into two or more clearly marked lanes for traffic," a vehicle "shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety." Ohio Rev. Code § 4511.33(A)(1).

[4] Notably, in *United States v. Freeman*, the Sixth Circuit found a police officer's observation of a single brief incident of partial weaving by the driver of a motor home did not constitute probable cause for traffic stop based upon a "lane violation" under a Tennessee law that appears to have been nearly identical to the Ohio law at issue in this case. 209 F.3d 464, 466 (6th Cir. 2000). However, that case is distinguishable from the present case. In *Freeman*, the violation was observed for only one-third of a second (an estimated twenty to thirty feet) and involved a motor home rounding a curve in the road on a windy day. *Id.* at 467-68. In contrast, the dash-cam video shows that Plaintiff crossed into the shoulder for approximately ten seconds. Video at 1:14-1:25. Further, Plaintiff was driving a pick-up truck on a relatively straight road. *Id.*; *see also United States v. Chandler*, No. CRIM.A. 10-23, 2010 WL 2870874, at *9 (E.D. Ky. July 2, 2010), *report and recommendation adopted,* 2010 WL 2870723 (E.D. Ky. July 20, 2010), *aff'd*, 437 F. App'x 420 (6th Cir. 2011) (finding that extent of violation distinguishable from facts in *Freeman*).

supported by probable cause, an officer's subjective intent is irrelevant." *United States v. Lott*, 954 F.3d 919, 922 (6th Cir. 2020) (citing *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.")); *see also United States v. Brooks*, 987 F.3d 593, 599 (6th Cir. 2021) (quoting *United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010) ("'*Whren* puts an end to inquiries' like Brook's 'about an officer's state of mind in conducting a traffic stop.'")). Plaintiff's argument thus fails.

It is therefore **RECOMMENDED** that Plaintiff's claim that Defendant Carter unlawfully conducted a traffic stop be **DISMISSED.**

### 2. *Defendant Carter's Actions During the Stop* (Count I)

A routine traffic stop is considered similar to a brief investigatory stop, so the analysis for reasonability resembles the factors developed in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968). *See Rodriguez v. United States*, 575 U.S. 348, 354, 135 S.Ct. 1609 (2015). A traffic stop can become unreasonable if the duration extends beyond what is reasonably necessary to effectuate the purpose of the stop, which in the case of traffic stops means addressing the traffic violation. *Id.* Therefore, authority for "the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* To complete the purposes of a traffic stop, an officer may "check[ ] the driver's license, determin[e] whether there are outstanding warrants against the driver, [ ] inspect[ ] the automobile's registration and proof of insurance," and "order a car's occupants to step out of the vehicle." *United States v. Brewer*, 858 F. App'x 888, 890 (6th Cir. 2021) (citations omitted).

Once the purpose of an underlying traffic stop ends, the police must not detain a vehicle or its occupants absent facts that given rise to a reasonable suspicion of some other violation of law. *Hernandez v. Boles*, 949 F.3d 251, 256 (6th Cir. 2020), *cert denied*, 141 S. Ct. 847 (2020); *see*

*also United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009) ("To detain the motorist any longer than is reasonably necessary to issue the traffic citation, however, the officer must have reasonable suspicion that the individual has engaged in more extensive criminal conduct."). Reasonable suspicion requires more than a mere hunch. *United States. v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744 (2002); *see also Navarette v. California*, 572 U.S. 393, 397, 134 S.Ct. 1683 (2014). Under the totality of the circumstances, the defendants needed to have had "a particularized and objective basis for suspecting legal wrongdoing." *Arizu*, 534 U.S. at 273; *Navarette*, 572 U.S. at 397.

Plaintiff asserts that Defendant Carter lacked probable cause "to order Plaintiff to exit his vehicle," to interrogate him, to seize and search Plaintiff's vehicle, and to detain him. (Doc. #9, *PageID* #73). However, Plaintiff does not allege in his Second Amended Complaint that that Defendant Carter ordered Plaintiff to exit the vehicle, interrogated him, or searched his vehicle, nor does Plaintiff provide any details regarding these allegations. Although the Court must accept the factual allegations in the complaint as true when deciding a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Plaintiff's statements that Defendant Carter lacked probable cause to order him to exit his vehicle, interrogate him, search/seize Plaintiff's vehicle, and detain him constitute legal conclusions that the Court is not bound to accept as true. Accordingly, Plaintiff failed to plausibly allege that Defendant Carter violated his Fourth Amendment rights by ordering him to exit his vehicle, interrogating him, and searching/seizing his vehicle.

Furthermore, Plaintiff alleges that Defendant Carter "lacked probable cause to detain Plaintiff during the traffic stop, or in the alternative, Defendant [] Carter … [d]etained Plaintiff for an unreasonable amount of time." (Doc. #9, *PageID* #73). However, Plaintiff provides no further details in support of his allegation that Defendant Carter detained him for an unreasonable amount

11

of time. Specifically, he does not explain how long Defendant Carter detained him. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Accordingly, Plaintiff failed to plausibly allege that Defendant Carter violated his Fourth Amendment rights by detaining him for an unreasonable amount of time.

It is therefore **RECOMMENDED** that Plaintiff's claims regarding Defendant Carter's actions during the stop be **DISMISSED**.

### 3. *Arrest* (Count III)

To state a Fourth Amendment claim for wrongful arrest, a plaintiff must prove that the arresting officer lacked probable cause to complete the arrest. *Robertson v. Lucas,* 753 F.3d 606, 618 (6th Cir. 2014); *Halasah v. City. of Kirtland, Ohio*, 574 F. App'x 624, 629 (6th Cir. 2014). "A police officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime." *Gardenhire v. Schubert,* 205 F.3d 303, 318 (6th Cir. 2000). "But probable cause to detain a motorist for one violation of the law does not ordinarily provide probable cause to detain the motorist for another violation." *Green v. Throckmorton*, 681 F.3d 853, 860 (6th Cir. 2012). Thus, "[o]nce a stop begins, ... detaining the motorist any longer than is reasonably necessary to issue the traffic citation requires reasonable suspicion that the individual has engaged in more extensive criminal conduct." *Id.* (quoting *United States v. Smith,* 601 F.3d 530, 542 (6th Cir. 2010)). "The results of a properly administered field sobriety test may serve as evidence of probable cause to make a drunk-driving arrest." *Bradley v. Reno*, 632 F. App'x 807, 810-11 (6th Cir. 2015) (citing *State v. Boczar,* 113 Ohio St.3d 148, 863 N.E.2d 155, 158 (2007)).

Plaintiff alleges that Defendant Carter unlawfully arrested him. (Doc. #9, *PageID* #75). Specifically, Plaintiff alleges that Defendant Carter "illegally and willfully seized Plaintiff as detailed in this complaint." (Doc. #9, *PageID* #75). Earlier in his Complaint, Plaintiff explains, "In the original stoppage there was never administered a field sobriety test[] on Defendant, the officer other than DUI had no probable cause or for that matter he was not certified to administer such a test."[5] *Id.* at 72. According to Plaintiff, "Defendant officers constructively placed Plaintiff under arrest after the illegal and false detention…. Defendant officers lacked probable cause to arrest Plaintiff." *Id.* at 75. Additionally, Plaintiff indicates that Defendant did not obtain a warrant to arrest him. *Id.* In sum, Plaintiff claims, "The arrest of Plaintiff was wrongful, without probable cause and deprived Plaintiff of his Fourth Amendment right to be free of unreasonable seizures." *Id.*

As noted above, Defendant Carter moves to dismiss Plaintiff's claim, asserting that the dash-cam video shows that he had "reasonable suspicion to administer field sobriety tests and probable cause to arrest [Plaintiff] for Operating a Vehicle While Impaired." (Doc. #28, *PageID* #176).

It does not appear that Plaintiff alleges that Defendant Carter lacked reasonable suspicion to conduct a field sobriety test. Instead, he alleges that Defendant Carter did not administer field sobriety tests or was not certified to administer such tests. (Doc. #9, *PageID* #72). The dash-cam video clearly shows that Defendant Carter administered several field sobriety tests. Video at 15:30-24:00. However, Plaintiff does allege that Defendant Carter unlawfully arrested him without probable cause. (Doc. #9, *PageID* #75). Moreover, the undersigned liberally construes Plaintiff's *pro se* Second Amended Complaint to allege that he was not intoxicated while driving.

---

[5] Although Plaintiff uses "Defendant," it appears that he was referring to himself, rather than Defendant Carter.

*See, e.g.*, Doc. #9, ¶¶ 5, 12 (alleging that Hagen "gave false information that [Plaintiff] was impaired and had been drinking ..."; questioning why Plaintiff "was allowed to drive off" after he was released if he had been intoxicated before his arrest).

Although Defendant's Motion to Dismiss relies on the dash-cam video to suggest that Plaintiff failed various portions of the field sobriety test, the video does not "blatantly contradict" Plaintiff's allegations that he was not intoxicated. Indeed, "[i]t is not self-evident simply by watching the video whether Plaintiff passed or failed any of the tests, particularly because there is no supporting testimony to explain to the Court typical results for sober individuals and intoxicated individuals." *See Leonard v. Phillips*, No. 2:20-CV-613, 2021 WL 12260885, at *5 (S.D. Ohio Feb. 23, 2021). Furthermore, the dash-cam video does not contradict Plaintiff's allegation that Defendant Carter was not certified to administer field sobriety tests.

Accordingly, the undersigned **RECOMMENDS** that Defendant Carter's Motion to Dismiss Plaintiff's Fourth Amendment claim related to his arrest be **DENIED**.

### C.     Retaliation

Defendant Carter asserts that Plaintiff's First Amendment retaliation claim fails because the dash-cam video shows that there was probable cause to stop Plaintiff for the marked lanes violation. (Doc. #28, *PageID* #176). Further, Defendant Carter argues that he had probable cause to arrest Plaintiff for Operating a Vehicle While Impaired based on the totality of the circumstances. *Id.*

Plaintiff alleges that Defendant Carter and Hagen retaliated against him by making an "unwarranted stop" and writing "an illegal ticket." (Doc. #9, *PageID* #74). Further, Plaintiff claims that they retaliated by "further detaining" him, using force by cuffing him, and damaging his vehicle (by leaving the headlights on and running down his battery). *Id.* Plaintiff indicates

that his "statement asserting his right to be free from unlawful detentions was protected by the First, Fifth and Fourteenth Amendments." *Id.* According to Plaintiff, Defendant Carter's "retaliation was unlawful and would chill an ordinary person in the exercise of first amendment rights to redress government, namely verbally asserting their rights to peace officers." *Id.* at 74.

To state a retaliation claim, a plaintiff must allege three elements: (1) that he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *See Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

With regard to the first element, Plaintiff appears to claim that Defendant Carter retaliated against him for making a "statement asserting his right to be free from unlawful detentions …" and "verbally asserting [his] rights …." (Doc. #9, *PageID* #74). However, Plaintiff does not specifically allege that he made any statements regarding his rights to Defendant Carter (or Hagen), nor does he indicate when the statement was made or to whom. Thus, Plaintiff failed to allege the first element of a retaliation claim. *See Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'").

However, even if Plaintiff's allegations are construed as meeting the first element, he failed to allege that Defendant Carter's adverse actions—stopping his vehicle, writing a ticket, detaining him, cuffing him, and damaging his vehicle—were motivated by Plaintiff's protected conduct—asserting his right to be free from unlawful detention. Notably, to the extent that Plaintiff alleges that he made a statement to Defendant Carter and Defendant Carter retaliated against him by

pulling him over, Plaintiff's claim fails because Defendant Carter's alleged retaliatory action occurred before Plaintiff spoke to Defendant Carter. Furthermore, given that Plaintiff does not allege when he made a statement or to whom, the undersigned is unable to determine whether the other alleged retaliatory actions occurred before or after the alleged protected conduct.

Accordingly, the undersigned **RECOMMENDS** that Plaintiff's First Amendment retaliation claim (Count II) be **DISMISSED**.

### D. Conspiracy under 42 U.S.C. § 1985

Defendant Carter contends that Plaintiff's conspiracy claim under 42 U.S.C. § 1985 fails because Plaintiff does not allege that he is either a federal office holder or the victim of class-based discrimination. (Doc. #28, *PageID* #177). Although Defendant addresses all three subsections of § 1985, Plaintiff indicates that he brings his § 1985 claim under subsection 2: obstructing justice; intimidating party, witness, or juror. (Doc. #9, *PageID* #77).

Subsection 2 of 42 U.S.C. § 1985(2) provides as follows:

> (2) Obstructing justice; intimidating party, witness, or juror
> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws .... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

16

Section 1985(2) consists of two separate provisions, separated by a semicolon. "The first clause of § 1985(2) ... forbids a conspiracy to deter a party or witness in a federal court from attending or testifying in court, punishing parties or witnesses for having attended or testified in federal court, or influencing or punishing federal jurors." *Warner v. Greenebaum, Doll & McDonald,* 104 F. App'x 493, 497 (6th Cir. 2004). As Plaintiff does not reference federal court, testimony, witnesses, or jurors, Plaintiff does not state a claim under the first clause of § 1985(2).

The second clause of § 1985(2) "applies to conspiracies to obstruct the course of justice in state courts." *Bragg v. Madison,* 20 F. App'x 278, 285 (6th Cir. 2001). To state a claim under the second part of § 1985(2), "'there must be some racial, or perhaps otherwise class-based, invidiously discriminating animus behind the conspirators' actions.'" *Williams v. St. Joseph Hosp.*, 629 F.2d 448, 451 (7th Cir. 1980) (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790 (1971)); *see also Kush v. Rutledge*, 460 U.S. 719, 726, 103 S.Ct. 1483 (1983). Plaintiff does not allege that Defendants acted with any discriminatory animus.[6] Therefore, Plaintiff does not assert a valid claim under 42 U.S.C. § 1985(2).

Accordingly, the undersigned **RECOMMENDS** that Plaintiff's claim under 42 U.S.C. 1985(2) (Count V) be **DISMISSED**.

### E.    Malicious Prosecution

Defendant Carter asserts that Plaintiff failed to state a cognizable claim for malicious prosecution under the Fourth Amendment. (Doc. #28, *PageID* #s 178-80).

To state a valid claim for malicious prosecution in violation of the Fourth Amendment, a plaintiff must allege facts meeting four elements:

---

[6] Plaintiff alleges that Defendant Carter is black and Hagen is white. (Doc. #9, *PageID* #72). Plaintiff does not indicate his own race in the Second Amended Complaint, nor does he allege that Defendant Carter acted with discriminatory animus.

> (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015) (quoting *Robertson v. Lucas,* 753 F.3d 606, 616 (6th Cir. 2014).

"Under the first element, an investigating officer does not escape liability just because someone else (e.g., the prosecutor) made the actual decision to prosecute, so long as the plaintiff can show that the officer 'influenced or participated in the decision to prosecute.'" *Tlapanco v. Elges*, 969 F.3d 638, 655 (6th Cir. 2020) (citing *Sampson v. Village of Mackinaw City*, 685 F. App'x 407, 417 (6th Cir. 2017). "To be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating." *Sykes v. Anderson*, 625 F.3d 294, 309 n. 5 (6th Cir. 2010). However, "[i]t is absolutely clear … that an officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's *truthful* materials." *Id.* at 314 (collecting cases); *see also Anderson v. Amawi,* No. 1:10CV1737, 2010 WL 5067426, at *5 (N.D. Ohio Dec. 6, 2010) (dismissing where the plaintiff alleged a police detective "did wrongfully and unlawfully charge plaintiff with aggravated robbery" because the complaint "include[d] no allegations to illuminate the role [the detective] played in the process to satisfy the requirement of making, influencing or participating in the decision to prosecute"); *Hollis v. Bullard,* No. 10–10729, 2011 WL 5184228, at *5 (E.D. Mich. Nov. 1, 2011) (providing a police report to the prosecutor and being identified as the complaining witness was not enough to establish that an officer aided in the decision to prosecute the plaintiff).

Plaintiff fails to sufficiently assert that Defendant Carter "made, influenced, or participated in" the decision to prosecute him. Plaintiff alleges that Defendants "'maliciously' … continue to prosecute the Plaintiff by continual stops due to the filing and challenge of the original case in chief criminal case and used [their] authority today to deter the civil proceeding against them when the defendants knew that they did not have a case." (Doc. #9, *PageID* #77). However, Plaintiff does not identify any stops other than the one on October 31, 2021. Moreover, there are no references to any police report, affidavit, or document of any kind prepared by Defendant and allegedly used in Plaintiff's prosecution. Indeed, Plaintiff's Second Amended Complaint never mentions a prosecutor at all, much less any interaction between the prosecutor and Defendant. Plaintiff does not allege any facts showing that Defendant Carter influenced or participated in the decision to prosecute him. Plaintiff's allegations in support of Defendant Carter's role in his prosecution are precisely the sort of "labels and conclusions," bereft of factual substance, that fall short of stating a claim under *Twombly.*

Turning to the third element, a malicious prosecution plaintiff must show that, "'as a consequence of a legal proceeding,' the plaintiff suffered a 'deprivation of liberty,' as understood in our Fourth Amendment jurisprudence, apart from the initial seizure." *Billock v. Kuivila*, No. 4:11-cv-02394, 2013 WL 591988, *5 (N.D. Ohio 2013) (citing *Sykes*, 625 F.3d at 308-09). Malicious prosecution claims usually involve defendants who have been detained prior to trial. *Id.* "An initial arrest and related detention are legally insufficient to satisfy the deprivation of liberty element of a malicious prosecution claim." *DiPasquale v. Hawkins*, No. 3:16-CV-219, 2020 WL 2906433, at *8 (S.D. Ohio June 3, 2020) (citing *Howell v. Ohio State Highway Patrol Subdivision*, No. 1:18-CV-510, 2019 WL 6465508, at *7 (S.D. Ohio Dec. 2, 2019)).

Here, Plaintiff does not allege that "as a consequence of a legal proceeding," he suffered a "deprivation of liberty," apart from the initial seizure. Indeed, he says very little about the legal proceeding—only that he "obtained a 'favorable termination.'" (Doc. #9, *PageID* #77).

In sum, Plaintiff has not plausibly stated a claim for malicious prosecution under the Fourth Amendment because he failed to allege facts which would satisfy the first and third elements. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Fourth Amendment malicious prosecution claim (Count VI) be **DISMISSED**.

### F.    State Tort Claims

Defendant Carter argues that this Court lacks subject-matter jurisdiction over Plaintiff's state-law claims for malicious prosecution[7] and "assaultive."[8] (Doc. #28, *PageID* #s 180-81). Specifically, Defendant Carter asserts, "The United States Constitution bars federal court jurisdiction over pendent state law claims against non-consenting states or state officials, regardless of the remedy sought by a plaintiff." *Id.* at 181 (citations omitted). Further, he contends that "[a]s a state employee, [he] is immune from such claims unless and until the Ohio Court of Claims determines that he is not entitled to immunity." *Id.* at 180.

Suits for monetary damages brought against state employees in their official capacities are barred by the Eleventh Amendment to the United States Constitution unless the state itself has consented to be sued. *See Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S.Ct. 873 (1985) (a suit against a state officer in his official capacity "is tantamount to a suit against the state itself."); *see also Papasan*, 478 U.S. at 276; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100,

---

[7] Plaintiff does not specify whether his malicious prosecution claim is founded in federal law or state law. Out of an abundance of caution, the undersigned has assessed Plaintiff's claims under both.

[8] Plaintiff labels Count 10: "Assaultive … ie, gender, race, ethnicity, or sexual preference) Obstruction of justice 6. Conspiracy, perjury, official." (Doc. #9, *PageID* #78). He incorporates the preceding paragraphs and alleges that Defendant Carter "falsified that the Plaintiff was drunk then falsified the encounter on 10-31-2021." *Id.* Defendant asserts that Plaintiff's "assaultive claim arises out of state law." (Doc. #28, *PageID* #182) (citing Ohio Rev. Code § 2305.111).

104 S.Ct. 900 (1981). The State of Ohio has not waived its immunity from suit in federal courts. *See Pullen v. Caldwell*, No. 3:20-CV-198, 2021 WL 2952776, at *3 (S.D. Ohio July 14, 2021) (citations omitted). Accordingly, to the extent that Plaintiff brings state-law malicious prosecution and "assaultive" claims against Defendant Carter in his official capacity, Plaintiff's claims are barred by the Eleventh Amendment of the United States Constitution. The undersigned therefore **RECOMMENDS** that Plaintiff's state-law malicious prosecution (Count VI) and "assaultive" (Count X) claims against Defendant Carter in his official capacity be **DISMISSED**.

With respect to Plaintiff's state-law malicious prosecution and "assaultive" claims against Defendant Carter in his individual capacity, this Court lacks subject matter jurisdiction to hear those claims. Under Ohio law, state officers and employees are generally immune from suit. *See, e.g., McCormick v. Miami Univ.*, 693 F.3d 654, 664 (6th Cir. 2012) (interpreting Ohio law); *Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989) (same); *James v. Tunnell*, No. 1:09-cv-00839, 2010 WL 2519654, at *4 (S.D. Ohio June 16, 2010) (same). Ohio Revised Code Sections 9.86 and 2743.02(F) provide for immunity in civil actions for state employees unless the Ohio Court of Claims determines that the employees are not immune. *See* Ohio Rev. Code §§ 9.86; 2743.02(F). The Sixth Circuit has construed these provisions together to mean:

> Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code section 9.86. Prior to that condition being satisfied, then, there is no claim under Ohio law upon which relief may be granted against state employees in their individual capacities.

*Haynes*, 887 F.2d at 705. In other words, "state employees may not be sued unless and until it has been determined by the Court of Claims that they are not entitled to immunity." *Id.* at 704.

Here, the Second Amended Complaint contains no allegations that the Ohio Court of Claims has determined whether Defendant Carter is entitled to statutory immunity. As such, this

21

Court lacks jurisdiction to hear his state-law malicious prosecution and "assaultive" claims against Defendant Carter in his individual capacity unless and until an immunity determination has been made by the Court of Claims. Accordingly, the undersigned **RECOMMENDS** Plaintiff's state-law malicious prosecution and "assaultive" claims against Defendant Carter in his individual capacity be **DISMISSED WITHOUT PREJUDICE**.

> ### G. Implementing § 14141

Plaintiff labels Count IV: "Implementing §14141 'Pattern or Practice' Reform: CIVIL NO. 99-5970(MLC) JOINT APPLICATION FOR ENTRY OF CONSENT DECREE[.]" It is not clear from Plaintiff's allegations whether he intended to bring this claim against Defendant Carter. However, Defendant Carter asserts that to the extent Plaintiff does intend to bring this claim against him, Plaintiff lacks standing to bring a cause of action under former 42 U.S.C. § 14141 (transferred to 34 U.S.C. § 12601) because it is a civil cause of action that is only available to the Attorney General of the United States. (Doc. #28, *PageID* #184) (citing *Adams v. United States*, No. 07-809C, 2008 WL 4725452, at *2 (Fed. Cl. July 16, 2008)).

Indeed, 34 U.S.C. § 12601 (formerly cited as 42 U.S.C. § 14141) provides standing to the United States (but not to an individual) to bring a civil cause of action against a governmental authority engaging in a pattern or practice that deprives persons of rights, privileges, or immunities secured or protected by the Constitution. 34 U.S.C. § 12601; *see also Daugherty v. USA*, No. CV 5:21-015-DCR, 2021 WL 203429, at *2 (E.D. Ky. Jan. 20, 2021). Thus, Plaintiff lacks standing to assert this claim. The undersigned therefore **RECOMMENDS** that Plaintiff's Implementing §14141 claim (Count VI) be **DISMISSED**.

22

### H. Constitutional Violations

Finally, Defendant Carter asserts that "Plaintiff's claims otherwise fail because the Complaint alleges insufficient facts to support Constitutional violation claims against [him]." (Doc. #28, *PageID* #182). Defendant Carter specifically cites to four paragraphs from Plaintiff's Second Amended Complaint, all but one of which has been discussed above. Accordingly, the undersigned will only address the remaining paragraph from Count VIII of Plaintiff's Second Amended Complaint.

In Count VIII, which Plaintiff labels "Conspiracy to Deprive Legal and Constitutional Rights," Plaintiff alleges that Defendant Carter and Hagen "acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive Plaintiff of his Constitutional Rights by taking of his personal and private property a 9-Millimeter hand gun and a revolver then filing more unauthorized tickets." (Doc. #9, *PageID* #78). However, Plaintiff does not provide any further information regarding the taking of his gun or the filing of more tickets. Plaintiff does not indicate when the gun was seized or when the other tickets were filed. Indeed, in the only other mention of a gun, Plaintiff alleges that Hagen "gave false information that [Plaintiff] was impaired and had been drinking and unlawfully handled his firearm." *Id.* at 72. Additionally, although it is not clear if Plaintiff is referring to a gun, he does allege that "all property had been returned to the Plaintiff." *Id.*

"[I]t is 'well settled' that civil rights claims 'must be pled with some degree of specificity and [] vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *Briscoe v. Jackson*, 285 F. App'x 205, 208 (6th Cir. 2008) (quoting *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008)). Plaintiff's conclusory allegations regarding Defendant Carter and Hagen taking his gun and filing more tickets lack any factual basis to support

a constitutional violation under § 1983.  Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Conspiracy to Deprive Legal and Constitutional Rights claim (Count IX) be **DISMISSED**.

### IT IS THEREFORE RECOMMENDED THAT:

1. Defendant Trooper Mutawakkil Carter's Motion to Dismiss (Doc. #28) be **GRANTED in part** and **DENIED in part**;

2. Plaintiff's Fourth Amendment unreasonable search and seizure claims (Count I), First Amendment retaliation claim (Count II), Implementing §14141 claim (Count IV), claim under 42 U.S.C. § 1985(2) (Count V), Conspiracy to Deprive Legal and Constitutional Rights claim (Count IX), and state-law malicious prosecution (Count VI) and "assaultive" (Count X) claims against Defendant Carter in his official capacity be **DISMISSED WITH PREJUDICE;** and

3. Plaintiff's state-law malicious prosecution (Count VI) and "assaultive" (Count X) claims against Defendant Carter in his individual capacity be **DISMISSED WITHOUT PREJUDICE** to renewal should the Ohio Court of Claims determine that Defendant Carter is not entitled to immunity under O.R.C. § 9.86.

July 19, 2024

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

24

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).